Wokley, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the final rejection by the Primary Examiner of claims 1, 10, 11, and 12 of appellants’ application for a patent on a method of defluorinating phosphate rock, on the ground of unpatentability over prior patents. No claims were allowed.
Claim 1, typical of the appealed claims, and upon which the other claims are dependent, reads:
1. The method of defluorinating phosphate rock which comprises subjecting the rock with a silica content not exceeding 6% to calcination at a temperature of at least 2600° IT. without substantial fusion in the presence of water vapor and of a reagent mixture consisting essentially of the reaction product of sodium carbonate and phosphoric acid, the .mol ratio of the Na20 to P20B content of the reaction product being between 1.6 and 2.8, and the CaO, Na20, P20« and Si02 content of the combined phosphate rock and reagent mixture being such that the mol ratio of these constituents in the formula
Mols CaO+Na20 — 3P20s Mols SiOa
is between 1.3 and 2.8, and maintaining the calcining charge at said calcining temperature for a sufficient period of time to produce a phosphate produce having high fertilizer availability and containing less than one part of fluorine for each 40 parts of phosphorus. .
The references relied on are:
Meriwether, 1,058,249, April 8,1913.
British Patent, 453,646, September 11,1946.
Tremel, 2,093,176, September 14,1947.
Ritter et al., 2,337,498, December 21,1943.
Butt, 2,442,969, June 8,1948.
Appellants’ process relates to the defluorinating of phosphate rock by calcination for producing a product suitable for use as a fertilizer or as a supplement for animal feed. As claimed here, the process consists essentially of subjecting such rock with a silica, content of not more than 6% to calcination at a temperature of at least 2,600? F. in the presence of water vapor and a reagent mixture consisting essentially of the reaction product of sodium carbonate and phosphoric acid, with the mol ratio of the Na20 to P205 content of .the reaction mixture being between 1.6 and 2.8, and the CaO, Na20, P205 and Si02 content of the rock and reagent mixture having a mol ratio corresponding to a specified formula. The charge is maintained at calcining temperature long enough , to produce a product containing less than one part of fluorine for each forty parts of phosphorus.
*832 The board, in affirming the examiner’s , rejection of claim 1, considered as a basic reference only the Ritter patent which it found “most nearly approaches the claimed process.” That patent relates to a process of producing fertilizer from phosphate rock by heating in the presence of phosphoric acid or alkali metal phosphates. The . temperature may be as high as 2,552° F., but it is stated that when alkali metal phosphates are used the temperature should be lower, with the preferable maximum being 2,336° F. Ritter does not indicate that the silica content of the rock should be less than 6%. He suggests a 4% silica content when phosphoric acid is used, but notes that a higher silica content is suitable when alkali metal phosphates are used, and some of his examples involve the use of more than 6% silica. Unlike appellants, Ritter does not add a reaction product of soda and phosphoric acid, but adds those ingredients separately.
Ritter gives six specific examples, none of which fully satisfies the requirements of appealed claim 1.- Example 6 is the closest, since it is the only one in which the mol ratio of the lime, soda, phosphoric acid, and silica meets the requirements of the claim. In that example, however, the soda and phosphoric acid are added separately and the mol ratio of ]Sra20 to P205 is 4.38 as opposed to the upper limit of 2.8 set forth in claim 1. Moreover, the operating temperature in example 6 does not exceed 2,336° F. whereas claim 1 requires a temperature of at least 2,600° F. •
The board was of the opinion the differences between Ritter’s process and that of claim 1 involved merely variations which would be obvious to a skilled worker in the art. Appellants, on the other hand, assert that the differences as recited in claim 1 are critical and have filed several affidavits in support of that contention.
The board properly refused to give weight to the affidavits so far as they express merely the opinions of the affiants as to the relative merits of appellants’ process and those of the references, or as to possible difficulties involved in the carrying out of the processes of the references. However, as pointed out below, some of the affidavits contain statements of fact which we consider relevant and material to the question of patentability of the appealed claims.
The affidavits state that unless a temperature substantially in excess of 2,500° F. is attained during the calcining the tricalcium phosphate present remains in its beta form, which appears to have no commercial value as a fertilizer. Heating to a higher temperature results in conversion of the phosphate to its alpha form which produces a higher availability as fertilizer. Accordingly, the difference in operating temperatures between appellants’ process and that of Ritter is not merely arbitrary, but has a definite significance.
*833 It was noted by the board that the Butt patent “mentions a temperature of 2,642° F. as previously used in the calcination of phosphate rock to reduce the fluorine content thereof.” While Butt does refer to that temperature, he states that it may be used only “by the exercise of extreme care” and that because of the difficulties involved in operating commercially at such a temperature it has been the general practice to pretreat the phosphate rock with sulphuric acid to convert it “into so-called den superphosphate.” He does not describe how operation at any temperature above 2,500° F. can be carried out. It therefore seems to us that the Butt disclosure would tend to discourage, rather than encourage, the use of a temperature as high as 2,600° in the Bitter process.
From the foregoing, it appears there are definite and significant differences in temperature, proportions of materials, and operating procedures between appellants’ process and that of the Bitter patent, which apparently constitutes the closest approach in the prior art. The affidavits reflect that appellants’ process is being used extensively and that it is the only commercial process being used to defluorinate •.phosphate rock solely by calcination to produce a defluorinated prod- • uct suitable as' both a fertilizer and a supplement for animal feed.
The board gave no weight to the evidence relating to commercial . success. Although the commercial process was carried out with the .^particular type, of raw material available, there is nothing to suggest that other similar materials would not also be successful so long as they conformed to the requirements of the claims. On the contrary, the affidavits appear to be sufficient to establish that satisfactory operation can be obtained throughout the claimed ranges but that difficulties are encountered at once in going beyond them.
It is, of course, true, as observed by the board, that if evidence as to commercial success is to be persuasive it must appear that such success resulted from the invention as claimed, but that principle does not necessarily require that, when a particular range is claimed, there must have been successful commercial operation at every point in the range. Where, as here, the claims are directed to a combination of ranges and procedures not shown by the prior art, and where substantial commercial success is achieved at an apparently typical point within those ranges, and the affidavits definitely indicate that operation throughout the claimed ranges approximates that at the particular points involved in the commercial operation, we think the evidence as to commercial success is persuasive.
Claim 1 is drawn to a rather specific method which differs in substantial respects from those of the prior art, and which is shown to have resulted in the successful solution of a commercial problem of *834 • long standing. Under the circumstances of the case we feel that appellants have made an inventive contribution to the art and that it is properly defined in claim 1.
Claims 10, 11, and 12’ are dependent upon and more limited than claim 1, and are allowable for the same reasons.
The decision of the Board of Appeals is reversed.
Jackson, J., retired, recalled to participate was present at the hearing of this appeal but did not participate in the decision.