54 CCPA
**Application of Arthur S. NEAVE, Jr.**
**Patent Appeal No. 7664.**

United States Court of Customs
and Patent Appeals.

Jan. 19, 1967.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The single claim on appeal,[1] defining a water-insoluble monoazo dyestuff,

---

1. Application Ser. No. 165,654, filed January 11, 1962, entitled "Compound."

stands rejected on the basis of obviousness,[2] 35 U.S.C. 103. The compound is defined in the claim as follows:

1. The water-insoluble monoazo dyestuff having the structural formula:

The prior art references relied on are:

| | | |
|---|---|---|
| Wagner et al. [I] | 1,522,089 | Jan. 6, 1925 |
| Wagner et al. [II] | 1,549,822 | Aug. 18, 1925 |
| Fischer [I] | 2,915,518 | Dec. 1, 1959 |
| Farben (Germany) | 602,064 | Aug. 31, 1934 |
| Fischer (Germany) [II] | 889,739 | Sept. 14, 1953 |

The board in its opinion found that "The Examiner's Answer has no precise statement of the several grounds of rejection." It reviewed the structural similarities of the claimed compound and the prior art compounds. Appellant submitted evidence attempting to show superiority of the claimed invention over the teachings of the prior art. The board concluded, after considering appellant's evidence, that the alleged superiority of the claimed compound over the prior art compounds had not been proven.

Appellant does not here dispute the facts found by the board concerning the structural closeness of the prior art compounds. According to appellant:

* * * The overall *issue* involved in this case is the sufficiency of the affidavit evidence presented in a situation where the invention is of the "selection variety" i. e., it involves the unexpected finding that a particular compound, which is a member of a large class whose members would be expected to impart color, can be used

2. A dispute as to whether the claimed compound is anticipated, 35 USC 102, apparently has been resolved as the parties here agree that the compound is novel.

for textile printing where each reference compound cited has some deficiency which limits its usefulness.

The solicitor apparently agrees as he argues:

* * * the only real issue on this appeal is whether the affidavit evidence of record is sufficient to rebut the finding of obviousness made by the examiner and Board.

We may therefore turn to a consideration of the evidence submitted by appellant. This evidence is explained in appellant's brief as follows:

Appellant filed two affidavits under Rule 132 by an expert, Schroeder, who is the Director of Research and Development in Pigments and Allied Products for the Hilton-Davis Chemical Company. The Schroeder affidavits * * * show the comparative evaluation as pigments of 8 dyestuffs, i. e., that of the claim here on appeal and of the seven most pertinent prior art reference dyestuff compounds. The 8 compounds were tested for their usefulness for the specific use proposed in appellant's specification, i. e. for textile printing, and the results were evaluated by six different test methods:

Test Method 1: Resistance to fading in ultra-violet light

Test Method 2: Resistance to Plissé printing

Test Method 3: Resistance to discharge printing

Test Method 4: Resistance to aqueous washing in the absence of chlorine bleach

Test Method 5: Resistance to aqueous washing in the presence of chlorine bleach

Test Method 6: Resistance to dry cleaning.

---

Appellant summarized the test results in the form of a chart. A specific finding for each of the eight compounds tested, according to each of the test methods above, is set forth.

The board's criticism of the test results falls into three types. First, the board seriously questions the admissibility of the results of certain of the tests. It reasoned that neither test 1 or test 2 was "standard." As to test 1, the board cited the following from 2 Color Index 2,698 (2nd ed. 1956):

* * * At present there are no internationally accepted standard conditions for carrying out light fastness tests nor fully accepted numerical standards.

Appellant comments on the above statement as follows:

* * * the dyestuff manufacturers, the companies that belong to the American Association of Textile Chemists and Colorists, test all new dyestuffs and materials so that they know what will happen under use conditions. We mention the American Association of Textile Chemists and Colorists (AATCC) because it is their tests, which are industry standard tests, that were mainly used in the affidavit submitted here. These are the routine tests, run exactly as set forth by the AATCC,* used for Test Methods 1, 4, 5, and 6.

* * * * * *

* Appellant's footnote:
One of the objects of the above organization is to promote increase of knowledge of the application of dyes and chemicals in the textile industry. In 1961 this organization had some approximately 250

corporate members including such companies as DuPont, Dow, General Electric and the company that owns the application here on appeal, Sterling Drug, Inc. through their "Hilton-Davis Chemical Company Division."

The Board, throughout its opinion, appears to question various of the tests made as not meaningful, as not based on internationally accepted standard conditions, as being inconclusive, as not being standard, and because of there being possible protection afforded by the resin coating. The Board is wrong. Most of the tests are well accepted tests by industry standards, since they are tests formulated by the American Association of Textile Chemists and Colorists, published annually and revised and updated periodically. * * * the fact the test procedure followed is that promulgated by the AATCC shows that the Board statement is either inaccurate or immaterial. The tests do not require absolute standards to be meaningful.

The main important reason the Board is wrong is the fact that all the tests conducted were parallel tests conducted in exactly the same way at the same time. * * * absolutely identical conditions were used. The tests used do not favor applicant's claimed compound over any of the other compounds. * * *

The solicitor acknowledges the board's statement but does not disagree with appellant's arguments.

As to test 2, the board stated "The test does not appear to be a standard one," absent further explanation. Appellant does not disagree. Rather it is argued that "Resistance to Plisse Printing" is a proper quality to test for in the type of dye claimed and that all compared dyes were tested under identical conditions. Appellant thus argues that this test produced results which are comparable and which show differences between the claimed dyestuff and the dyestuffs of the prior art. The solicitor does not disagree.

We think the board, in view of the arguments of record, erred in its objection to the comparative tests. While no international standards exist, the facts shown have rational probative value. 1

Wigmore, Evidence 289 (3rd ed. 1940). We therefore find that the evidence concerning tests 1 and 2 was admissible.

Second, the board challenged the relevancy of tests 2, 3, 4, 5 and 6. As to test 3, "Resistance to Discharge Printing," the board stated "we are not aware that any such quality * * * is a commonly desired quality in pigments that are used for emulsion printing." Appellant argues in response:

The Board is wrong, as a very simplified explanation of the technology involved will show. Discharge printing is a method of simultaneously applying a color remover and a color. Suppose the colorist wants to have red polka dots on a grey background. First the grey is applied so the entire cloth is solid gray. Now he wants to print the red polka dots, but if he prints the red over the grey he won't get the true red. So it is desirable to remove the grey from the places where the red is to go. Formaldehyde sodium sulfoxylate is an example of a "discharge" agent which is used to remove the grey color. Naturally it is vital to know that the color remover will not affect the new color that is being applied simultaneously.

* * * The Board fails to appreciate that it is desirable to have only the ground color dye (i. e. the grey background in the above example) easily destructible, but that the dye to be overprinted (i. e. the red polka dots) must be resistant to and not destroyed by the discharge agent. Colored polka dot effects are not ordinarily produced by in situ azoic dyeings, but rather by printing. Under these circumstances, resistance to "discharge" is an important consideration.

The solicitor does not disagree with appellant's argument.

As to tests 2, 4, 5 and 6, the board stated:

* * * When it is considered that appellant's pigment is coated and held on the fabric by a resinous coating, it is not clear that Tests 2, 4, 5 and

6 were tests made on the pigments as such; they seem to be tests made on the combination of resin and pigments and the claim is not drawn to a resin-pigment combination. Noting again that such pigments are often used as formed-in-situ azo dyestuffs, it seems that these tests could more pertinently have been made on fabrics having these dyes and nothing else.

Appellant responded as follows:

* * * While the Board may be correct that the claimed dyestuff could have been evaluated differently, realistically the best possible evidence of unexpected beneficial properties is in a test for the specific utility set forth in the specification. In the present case this utility is as a "pigment, particularly for textile printing." These compounds are to be used in a resin-pigment combination. The manner of using the claimed dyestuff as a pigment in textile printing is set forth in the specification * * *. Certainly a test designed to compare the claimed dyestuff and the reference dyestuff in the *actual* setting of its intended end use would seem to be the most pertinent test, and the one which is of the least "dubious" nature possible.

One could say the tests, in a sense, were made on the combination of resin and pigments, while the claim is not drawn to such a resin-pigment combination. Yet when the Board suggested that the tests should have been made on fabrics having these dyes and nothing else it was really advocating a test of at least a "fabric-pigment combination," and the claim is not drawn to that combination either. The Board is wrong in its narrow view of what is actually being tested. The test is of the pigment in a selected "use setting."

* * * * * *

* * * The claim is directed to a particular "water-insoluble monoazo dyestuff." The dyestuff itself exists as a solid. Think of it existing as a powder. How can a powder be used to stick to and thereby dye cloth? If it were water-soluble, a colorist might dissolve it in water and soak the cloth in the solution. But it is not water soluble. One way to get this powder to stick to the cloth and thereby color it, is to first form the compound in the cloth by reacting its components within the cloth fibers, thus actually trapping the dyestuff particles within the unicellular structure of the fiber. That is the formed-in-situ azo dyestuff to which the Board referred. A different way is to fix the powder to the cloth. That is the method which appellant prefers his claimed dyestuff be used. The "resin" is the "binder" that by polymerizing and being cured fixes the dyestuff molecules to the cloth fiber. The two methods of application, i. e., the formed-in-situ mentioned by the Board and the printing used by appellant, are quite different and dyestuffs with suitable properties when used one way, are not necessarily usable the other way.

The solicitor does not disagree with appellant's arguments. We find appellant's arguments convincing. All of the test results are comparative and we find no reason of record which convinces us that one of ordinary skill in the art would find these results to be due to some factor not associated with the claimed invention. In re Widmer, 353 F.2d 752, 53 CCPA 762; see also In re Hostettler, 356 F.2d 562, 53 CCPA 1069.

Third, the board challenged the credibility of tests 1 and 2. As to test 1, the board inferred that the tests would not be given "full credence" because no international standard existed regarding light fastness. This objection is similar to the objection based on admissibility. As a general statement, it is true that one of ordinary skill in the art might favor results compared to an international standard if such a standard was available. Thus the board's position has merit in regard to credence. But appellant argues test 1 is recognized by AATCC. The solicitor does not dispute this. AATCC standards are apparently

accepted by industry. In absence of international standards and considering the arguments of record, we do not find that one of ordinary skill in the art would seriously question the credibility of the results of test 1. The law should not require greater proof concerning credibility than what those in the art accept.

As to test 2, the board stated:

* * * the plisse Test 2 seems quite inconclusive if its purpose is to show that Wagner [II] * * * is in error in holding that halogen substituents will further improve the kier boiling fastness of a Naphthol ASOL dye. Such a test, in which the alkali-overprinted fabric is steamed, is not thought to be as rigorous a test of hot alkali resistance as kier boiling. * * *

Appellant answers:

Appellant's compound has no halogen substituent, so there is no need to dispute the reference statements. Evidently the Board does not appreciate the purpose of the plisse printing test which is to duplicate a processing step likely to be encountered by the claimed pigment, and to show many of the reference compounds could not be used there. The kier boiling the Board refers to is a method of preparing the cloth (removal of pectins, waxes, etc.) prior to dyeing and/or printing. Cloth is not subjected to this treatment after it has been dyed and/or printed.

The solicitor mentions that kier boiling does "not, at least always," occur before dyeing or printing. We do not find the results of test 2 lacking in credibility.

In summary, we find no valid objection as to the test results based on admissibility, relevancy or credibility. We will therefore consider the objections as to the weight to be accorded this evidence.

As to test 4 and 5, the board found the results not "meaningful." According to the chart all compounds tested were rated "satisfactory." The board stated the tests should have been continued until some difference was proven. We do not find this criticism to be valid. Appellant has no burden to prove a difference. The fact that all compounds tested were rated satisfactory as to tests 4 and 5, absent evidence to the contrary, is entitled to consideration. Moreover, this fact tends to operate more to the advantage of the Patent Office. We see no reason for objection to it.

Finally, the results of test 1 are characterized as showing a "difference in degree" only. While we think this comment is broadly directed at the weight to be accorded this evidence, it is conclusionary in nature and of no help in determining the weight to be accorded the evidence.

We shall now set forth precisely what the evidence demonstrates. We observe that almost all of the solicitor's argument is directed to an evaluation of this evidence.

Concerning the claimed compound, it was rated "satisfactory" in all of the tests. The prior art compounds were rated as either "poor" or deficient by a certain numerical amount in certain of the tests. The prior art compounds were rated deficient in either 2 or 4 of the tests.

The solicitor apparently takes no exception to eliminating from consideration those compounds that were rated "poor" in one or more tests. Rather, our consideration is directed to prior art compounds 3 (Fischer II) and 4 (Fischer I). Compound 3 was rated in tests 1, 3 and 6 as having a 15%, 20%, and 20% "loss in color value," respectively, compared to the claimed compound. Compound 4 in tests 1 and 3 was rated as having a 10% and 20% "loss in color value," respectively.

According to the affidavits, the term "satisfactory" means a color value loss estimated by visual inspection to be less than 5%, 10% and 5% for tests 1, 3 and 6, respectively. As to test 1, the board detected a "slight superiority of appel-

lant's pigment 1 over" pigments 3 and 4. It did not detect a difference as to tests 3 and 6.

The solicitor in his brief quotes approvingly from the examiner's answer as follows:

* * * the examiner properly stated that "the affidavits show no more than a difference in degree over the art compounds and not a difference in kind"; that "An alleged color value loss of 10%, 15% or 20% with respect to 5% or 10% for the instantly claimed compound is not considered to represent a patentable superiority"; significantly adding that "the percentage color loss values alleged are the result of visual inspections only and accordingly subjective in nature" * * *. The results set forth in Table I * * clearly show, at a minimum, that the claimed compound is not significantly superior to Test Pigment No. 3 from the Fischer [II] * * * patent or to Test Pigment No. 4 from the Fischer [I] * * * patent * * *.

Appellant answers the above argument as follows:

A 5 to 10 percent difference in loss of color value is a significant difference in determining the suitability of an azo pigment for a specific use * *. Moreover, it is precisely because the claimed compound is in a crowded art, that what might otherwise appear to be relatively insignificant property differences, must be regarded as major. Naturally smaller steps forward in the art are required for [a patentable] invention in crowded arts, as contrasted to pioneer inventions which are major steps forward. The protection sought here is commensurate with the advance. Here appellant seeks a patent on a single compound, which is superior to its neighbors in a number of respects. It is an outstanding dyestuff while each of its neighbors suffers certain deficiencies. That is submitted to be sufficient as a step forward in a crowded art. Appellant has shown that his pigment has an unusual combination of desirable properties, which its neighbors do not have, and this is the reason the properties are unobvious.

Our basic dispute is with the Board's belief that a 10 percent loss in color value in the dry cleaning test is insignificant. To colorists, clothing manufacturers, dry cleaners, and the consuming public, a 10 percent loss in color value of clothes sent to be dry cleaned would be of very great significance. The industry is continually seeking pigments and dyestuffs with improved fastness properties. Its standards are the practical tests by which "significance" is to be measured. Ultimately unobviousness and patentability must be based on the same standards.

Also, appellant argues the board erred in finding no apparent differences in the results of tests 3 and 6, stating:

The Board held that the tests shown in the affidavit gave "no apparent differences in the results" between the claimed compound and the reference compounds, or at most only a "possible slight superiority, which we would ordinarily regard as nothing more than a difference in degree." It thereby failed to give any credence whatsoever to the expert who evaluated the test, and who was clearly aware of the significance of such tests by reason of his 31 years' experience in this area. The expert's evaluation of what is shown by the tests appears in the table * * *. There the claimed compound, test pigment No. 1, is compared with seven reference compounds. Refer for the moment to the results for Test Pigment No. 5. It proved "poor" in two out of the six tests (Test Method No. 1 and 2), where the claimed compound was "satisfactory." The affidavit * * * defines "poor" for Test Method No. 1 as referring to a color value loss estimated to be 50 percent or more, and in Test Method No. 2 as referring to a color value loss estimated to be 10 percent or more and/or a definite undesirable change in shade. Now, whether the Board

believes that these changes are or are not significant, the fact is that workers in the industries most concerned feel that such changes are very significant, and those labeled "poor" would not be considered usable by persons concerned with that property.

In concluding that the claimed invention was obvious, the board observed:

\* \* \* While we agree with appellant that a showing of over-all superiority in all of the important qualities desired of such a pigment or dyestuff might be a sufficient indication of patentability, we do not think such a showing has been made.

Appellant argues the board erred in its view of the requirements of the law:

The Board is incorrect in its statement of the requirements of the law. It is not necessary to make a showing of over-all superiority in *all* of the important qualities desired of such a pigment or dyestuff. It is only necessary to make such a showing as to *some* of the important qualities. \* \*

We agree with appellant. It would be an unreasonable burden upon inventors in the dyestuff art to require that each new dye be superior in all important qualities. We are also convinced, considering the evidence of record, that appellant's invention is unobvious. Appellant selected in a crowded art and here claims, a single compound which has been demonstrated to possess advantages over all prior art compounds. We are not persuaded by the solicitor's arguments that because the factual evidence offered by appellant results from visual inspection and estimation it is of little weight. The affiant's qualification to make this evaluation was established in the affidavit and was not challenged. In his judgment,

The test results set forth above established that Test Pigment No. 1, the monoazo compound disclosed and claimed in the above-identified Neave patent application Serial No. 165,654, is a brilliant and strong red pigment of distinctive shade with highly valuable properties for textile printing. Moreover, the said test results demonstrated that Test Pigment No. 1 is clearly superior to each of Test Pigments Nos. 2–8 inclusive, in that it was the only one of the eight test pigments which gave satisfactory results in all of the comparative tests.

We observe that the perception of color is in all cases a personal and hence a "subjective" determination. It is known that the human eye of one trained in the dyestuffs art may have a very different reaction to and judgment of color values than is the case with the eye of an untrained observer. We think, therefore, that though an expert's opinion in this field is necessarily predicated on his subjective judgment it is not therefore a capricious value such as might be observed in a layman's evaluation of the same colors.

We therefore conclude from the evidence of record that appellant has shown by convincing evidence the superiority of the claimed dyestuff over the prior art dyestuffs. We do not find the claimed compound to be obvious from the closely related compounds in the prior art for the simple reason that we fail to find teachings of record which are sufficient to make obvious to one of ordinary skill in the art the selection of the claimed compound for its over-all superior dyeing properties in view of the prior art compounds.

The decision of the board is therefore reversed.

Reversed.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.