55 CCPA

**Application of Allan A. HAYATIAN.**

**Patent Appeal No. 7969.**

United States Court of Customs and Patent Appeals.

June 6, 1968.

As Amended on Rehearing Nov. 14, 1968.

2. As a result of this finding, we need not consider plaintiff's alternative ground for recovery.

Julian Caplan, San Francisco, Cal., for appellant.

Joseph Schimmel, Washington, D.C., (Jere W. Sears, Washington, D.C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and KIRKPATRICK,* Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of the sole remaining claim of appellant's application entitled "Seal for Track Links."[1]

The invention relates to a metal-to-metal seal which serves to keep abrasive material such as sand and gravel dust out of the area where adjacent crawler-type tractor tread links are pivotally joined together. An over-all view of the treads, showing the method of connection of two links is illustrated in Figure 1 of appellant's application, and a detailed view of the metal-to-metal seal of the invention is illustrated in Figures 2 and 4.

Each link 11 has a laterally outwardly offset boss 12 and, further, is relieved at its inner face as shown by reference numeral 13 to permit overlapping of end

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 267,747 filed March 25, 1963.

14 of the adjacent link. End 14 is relieved at its outer face as indicated by reference numeral 16 to accommodate the end of the first-mentioned link. It is essential that the two adjacent links 11L and 11R as designated in Fig. 1 flex relative to each other about axis 17 as the chain travels around the drive and idler sprockets (not shown) which drive the track. It is also apparent from Fig. 1 that the links 11 are arranged in pairs on the inside and outside of the tractor. Thus, link 11L has as its mate link 21L which is the same in construction but oppositely facing.

The inner face of boss 12 is formed with a counterbore 22 of substantial depth surrounding the central bore 23 of said boss 12, bores 22 and 23 having the common axis 17. Fitting into bore 23 with a forced fit is pin 24 which interconnects the pair of links 11L, 21L. Surrounding pin 24 is a sleeve or bushing 26 which can rotate or oscillate relative to pin 24. Bushing 26 is forced into the bore 27 of end 14 of link 11R and its outer end enters counterbore 22 but does not reach the bottom thereof. The diameter of counterbore 22 is slightly greater than the outside diameter of bushing 26. Accordingly, bushing 26 turns relative to boss 12 but not relative to end 14, whereas pin 24 turns inside bushing 26 but does not turn relative to boss 12. Bushing 26 enters the corresponding counterbore 22 in the boss 12 of link 21L.

The structure as described thus far is conventional. In such a structure, abrasive material enters the crevice indicated at 28 in Fig. 1 between the links, and also into the interface between offsets 13 and 16, and thence between the outside of bushing 26 and the cylindrical surface of counterbore 22. Once such abrasive material enters the space between the relatively oscillating surfaces, rapid wear of the parts ensues.

Appellant's invention is a metal-to-metal seal which prevents entrance of abrasive material to the space surrounding pin 24. As shown in Fig. 2, the seal consists of a flat washer 32 against the surface of the counterbore in boss 12, and a truncated conical (Belleville) washer 33 having its small diameter end facing the flat washer 32 and its large diameter end facing the end of bushing 26. When assembled, the washers are compressed axially, and the Belleville washer is flattened as shown in Fig. 4. However, the Belleville washer retains its resiliency, and thus will maintain a seal as the washers wear, and a crevice opens up between the washers.

Appellant's specification states that because the diameter of the large end of the Belleville washer has greater frictional resistance to rotation than the small end, it will tend to remain stationary relative to bushing 26, and the small diameter end will tend to turn relative to pin 24. On the other hand, washer 32 tends to remain stationary with respect to boss 12. Hence, wear occurs as the small diameter end 36 oscillates relative to washer 32. This arrangement is said to insure that the wear of the relative movement of the two washers is absorbed by the washers themselves rather than the permanent members of the link assembly against which they fit, thereby preserving the life of links 11 and bushing 26.

The sole claim on appeal is:

1. A track link assembly comprising a first link having at a first end thereof a laterally outward offset boss and a flat face facing inward on the inner face of said boss, said first link formed with a first bore extending through said boss normal to said inner face and a counterbore in said inner face, a second link having a second end partially overlapping said first end and oscillatable relative to said first link about the axis of said first bore, said second end having an outer face parallel and inwardly offset relative to said inner face, said second link formed with a second bore normal to and extending through said outer face coaxial with said first bore, said second bore of a diameter larger than said first bore and slightly less than said counterbore, a bushing force fit

in said second bore with its outer end projecting beyond said outer face and partially into said counterbore and turnable in said counterbore relative to said first link, a pin rotatable inside said bushing and having an outer end force fit in said first bore, a Belleville-type first washer in said counterbore around said pin having its large diameter end against the adjacent end of said bushing, and a flat second washer in the bottom of said counterbore around said pin, said second washer on the small diameter side of said first washer, said first and second washers, having substantially the same outside diameter slightly less than the diameter of said counterbore, said first and second washers having substantially the same inside diameter slightly greater than the diameter of said pin said washers squeezed between the bottom of said counterbore and the outer end of said bushing until said first washer is approximately flattened, said washers rotatably sealing said first link and said bushing around said pin and exerting an axial thrust relative to said first and second links.

The references relied upon are:

| Burgman | 2,906,562 | September 29, 1959 |
|---|---|---|
| Simpson et al. (Simpson) | 3,050,346 | August 21, 1962 |

Simpson is the basic reference, and it shows the identical link structure, but having a metal-to-metal seal consisting of two Belleville washers having their small diameter ends abutting. Because of its pertinence to the discussion which follows, Fig. 3 of the Simpson reference is reproduced below:

The advantages alleged by Simpson for his seal are substantially identical to those alleged by appellant. The disclosure of Simpson is that due to the greater engagement of the large diameter ends of the washers, the washers will remain stationary with respect to the bushing and boss, and will rotate relative to each other. Wear is thus said to be restricted to the faces of the washers. It should be noted that Simpson also compresses the washers during assembly, and that the crevice shown in Fig. 3 opens up upon wear, similar to the crevice in appellant's device.

Burgman also discloses seals for tread links. The Burgman seal comprises a rubber seal having a metal face. This metal face contacts a smooth hardened bearing washer disposed in a recess in the bushing, the bearing washer serving "as a facing for the recess."

The examiner rejected the claim as being obvious under 35 U.S.C. § 103. After noting that the sole difference between the claimed invention and the Simpson device is the substitution of a flat washer for one of the conical washers, and that Burgman suggests the use of a flat washer as a wear-bearing surface in a resilient seal, the examiner reasoned:

The use of conical washers as sealing elements is well known in the art. Such washers are frequently employed either in multiple arrangement or as single washers depending upon the space to be filled or the amount of resiliency desired. Flat washers are also well known as having innumerable applications including that of pro-

viding wearing surfaces. One having ordinary skill in the art once having become aware of the application of conical washers to an endless track by virtue of the Simpson et al. disclosure would recognize especially in view of the suggestion of Burgman that a flat washer could be substituted for either one of the conical washers 18 without substantially adversely affecting the operation of the seal.

The board affirmed, noting that Simpson discloses that the two Belleville washers, by virtue of their configuration, will be stationary relative to the parts their outer diameters engage and will rotate relative to each other. The board said:

> If this in fact takes place, the disclosure of Simpson et al. clearly negatives any possible patentability of the instant case since it is perfectly obvious to substitute for one of the two Belleville washers a flat hard bearing washer to obtain only the same result, flat bearing washers being well-known to the art as exemplified by Burgman.

Appellant bases his appeal to this court primarily on the argument that the Simpson device, which he states is in wide commercial use, has an inherent defect which his invention overcomes. It is appellant's position that although Simpson states that his Belleville washers rotate relative to each other, as a practical matter it sometimes happens that foreign matter wedges in the crevice between the Belleville washers, locking them together, so that instead of turning relative to each other they turn together. When this occurs, the sharp corner on the large diameter end of the outer washer digs into the relatively soft material of the outer link and accordingly scores and enlarges the counterbore until it is severely worn. Such wear reduces the resilient effect of the seal and also enables abrasive material to enter through the enlarged counterbore into contact with the pin and the bore in the outer link, damaging the structure.

Appellant claims by affidavit that his invention solves this problem. The affidavit, by the appellant himself, states that he is head of the Engineering Department of WesTrac, largest independent manufacturer of tractor track replacement parts in the United States; that he has examined many worn tractor links embodying the Simpson invention; that a substantial number of these have the counterbore of the outer link scored by turning of the Belleville washer; that in a substantial number of cases this scoring is caused by the two Belleville washers "freezing" together through lodging of abrasive material between the Bellevilles, sufficient heat of friction generated between the rotating parts, or for some other reason; and that such scoring creates a passage whereby abrasive material can by-pass the seal and bring about destruction of the link seal.

Having thus made a statement based upon personally observed factual matter concerning the problem of the prior art device, appellant alleged the following:

> Affiant's construction shown in Fig. 2 has an advantage over Simpson in that the broad expanse of the flat washer 32 in contact with the bottom of the counterbore 22 provides a frictional area of contact of great amplitude as compared with Simpson and insures that the washer 32 will not turn relative to link 11L. Since the washer 32 is very hard as compared with the material of which the link is formed and since the Belleville washer 33 is also very hard, the sharp corner of the Belleville washer 33 does not destroy the washer 32 and hence wear of the bottom of the counterbore is eliminated. Furthermore, there is no substantial reduction in the sealing effect in applicant's construction as compared with Simpson. Thus, the structure of Fig. 2 of the present application reduces the possibility of eventual destruction of the seal by wear into the counterbore and is more effective in preserving a sealing effect over prolonged use than in Simpson.

The examiner was critical of the affidavit on the ground that it was nothing more than an expression of opinion not

substantiated by facts. The examiner suggested that photographs should have been submitted to show wear or scoring of the prior art structure. Further, the examiner felt that the affidavit lacked any factual basis for concluding that appellant's device was any improvement over the prior art. On this point he suggested that comparative tests would be required.

The board agreed that under the facts of the present case, an opinion affidavit of an interested party is insufficient, and that a comparative test of the reference and application devices is a proper requisite.

We are in partial disagreement with the examiner and the board as to the weight to be given the affidavit. The first part of the affidavit represents a report of the first-hand visual observation of factual matter by a person who is unquestionably qualified to observe and evaluate the subject matter. While the affidavit contains conclusions concerning the cause and effect of the scoring, these are the conclusions of an engineering executive in a company which is vitally concerned with observing and evaluating causes of failure in tractor treads. The conclusions drawn relative to the Simpson device appear reasonable and to be within the competence of the affiant. In re Neave, 370 F.2d 961, 54 CCPA 999. We therefore accept the affidavit as evidence that the Simpson device will occasionally fail due to "freezing" of the Belleville washers.

We agree with the examiner and the board, however, that the affidavit is unpersuasive insofar as it attempts to show superiority of appellant's device over the Simpson device. In effect, the affiant-inventor says no more than that he thinks his device is better than the prior art device. Since he alleges his familiarity with the prior art device, we would have inferred from the mere fact that he filed an application that he thought his device to be an improvement in some respect. Thus we consider the affidavit no more persuasive than the application itself on this point. In evaluating the obviousness of an invention, we are concerned with *facts,* Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, and an affidavit which does no more than to express the unsubstantiated opinions of affiants as to the relative merits of the appellant's device and prior art devices is entitled to no weight in ordinary circumstances. In re Hollingsworth, 253 F.2d 238, 45 CCPA 830.

Appellant argues that it should be self-evident that the flat washer of his invention is less likely than the Belleville of Simpson to "freeze" to the opposing Belleville. His position is

\* \* \* that a broad, flat washer such as the washer 32 of applicant has a greater area of contact with the bottom of counterbore 22 and hence that it does not tend to turn relative to the counterbore as easily as would be the case where a Belleville washer has merely its end edge in contact with the bottom of the counterbore, a much lesser area. *Since the frictional resistance between two bodies is proportional to the area of contact,* and since the area of contact between the flat washer of applicant is much greater than the area of contact of the end edge of the Simpson washer, *the fact that the flat washer is less likely to turn relative to the link than the Belleville washer is evident.* \* \* \* [Emphasis added.]

The solicitor, in response to this argument, pointed out that appellant's major premise is contrary to Coulomb's second law of friction for dry surfaces,[2] namely

2. Encyclopedia Americana (1964 ed.), Subject—Friction, subtopic—Coulomb's Laws:

    Most texts in mechanics are agreed upon a set of conclusions first published by Charles Augustin de Coulomb in 1785 and supplemented by extensive work of Arthur Jules Morin (1832) \* \* \*.

    \*    \*    \*    \*

    The laws of Coulomb friction are:

    (1) The frictional force is directly proportional to the force or load pushing the two bodies together. (2) For a given load, the frictional force is independent of the area of contact. (3) The kinetic frictional force is independent of the velocity of sliding. (4) The co-efficient of friction, static or kinetic, for any pair of surfaces depends upon the nature of the materials, their hardness and smoothness.

    The first two laws of Coulomb friction must be modified since it was found by F. P. Bowden and D. Tabor in 1938 that for metals in contact the

that for a given load the frictional force is independent of the apparent [3] area of contact, and derived equations to demonstrate to the court that the Belleville washer actually has a greater frictional restraining torque than the flat washer. We conclude, without judging the scientific merit of the applicability of Coulomb's laws of friction in all instances, that there exists sufficient controversy regarding the aspect of friction here involved so as to indicate that it is not necessarily self-evident that the flat washer is less likely to turn relative to the link than the Belleville washer.

█ Appellant also protests the requirement of the examiner and the board that he present comparative tests showing the alleged superiority of his device in order to overcome the obviousness rejection. Insofar as the language used by the board might be taken to indicate that comparative tests were the *only* evidence which could overcome the rejection, we would disagree with it. However, in the face of a strong obviousness rejection, as is presented here, it is certainly proper for the examiner or the board to require an applicant to come forward with such *facts* as will be effective to shift the burden of proof to the examiner to come forward with further support for his conclusion of obviousness. In re Katzschmann, 347 F.2d 620, 52 CCPA 1497. Certainly comparative tests would be highly persuasive as showing such facts.

█ On this record, appellant has failed to produce a *factual* showing adequate to overcome the strong suggestion of obviousness presented in the art of record.

The decision of the board is affirmed.

Affirmed.

RICH, Judge, dissenting, with whom SMITH, Judge, joins.

The structure of the invention and the disclosure of the closest prior art, the patent to Simpson et al., No. 3,050,346, are adequately described in Judge Almond's opinion. The only issue in this case is obviousness under 35 U.S.C. § 103. This is a case in which we clearly must be wary of making a judgment of obviousness on purely theoretical considerations and heed the voice of experience as it speaks to us from the record. We must also try to avoid hindsight reconstruction of prior art disclosures in the light of appellant's teachings.

Caterpillar Tractor Co., the leader in the field, well-knowing the need for a track ink seal and what it must accomplish, devised the Simpson seal. In theory it would appear to solve the sealing problem. Its Simpson patent states:

> *Wear* of the ends of the bushings and the inner faces of the recesses 17 * * * *is* also *eliminated* because the washers 18 do not rotate relative to the bushing and the recess. All tendency toward wear in this area is between the hard faces of the washers 18 and is greatly minimized because of their hardness and the inability of abrasive materials to enter between their contacting surfaces. [Emphasis added.]

This appears to have been theorizing on the part of Simpson, or his patent solicitor. It also appears to have been erroneous.

Applicant, head of the engineering department of WesTrac Company, assignee of the application at bar and largest independent manufacturer of replacement parts for tractor tracks in the United States, has filed an affidavit reciting the following *facts:*

> The principal portion of the business of WesTrac is supplying replacement parts with [for?] worn Caterpillar tractors. Recent models of Caterpillar tractors use the structure shown in * * * Simpson Patent No. 3,050,346. In the course of affiant's duties, he has

frictional force is independent of the load and directly proportional to the actual area of contact. This area depends on the number of points in contact and is smaller than the apparent contact area. Increasing the load serves of course to increase the number of contact points. Careful tests, using the

electrical conductivity of these points, indicate that the deciding factor is indeed the area and not the load.

3. It is noted that the record provides no assurance that the *actual* contact area for the Belleville washer would be less than that for the flat washer.

had occasion to examine many worn Caterpillar track links and determine the cause of failure thereof.

In a substantial number of worn Caterpillar tracks, it has been found that the counterbore of the outer link has become scored by turning of the sharp outer edge of the adjacent Belleville washer indicated by reference numeral 18 in Fig. 1 of Simpson. Such washer 18 is of a very hard material whereas the link boss 16 is of a relatively soft material and any turning movement of the sharp corners of the washer results in a scoring of the bottom of the counterbore.

Accepting these facts, as the majority opinion does, it follows that in a "substantial number" of cases Caterpillar's Simpson seal fails to operate as intended, or as it is supposed to operate in theory, and one is forced to the inevitable conclusion that solving the problem of sealing this particular tractor tread joint is not as easy as it looks. Simpson did not solve it with his invention and he had available to him Burgman's disclosure of rubber seals faced with flat washers as wearing surfaces. Burgman's patent issued Sept. 29, 1959. Simpson did not file until Jan. 24, 1961. Burgman was no help to Simpson. Equally, his *teachings* are of no help in curing the defects of Simpson's seal.

The majority also expressly accepts the showing of Hayatian's affidavit that the *theory* of Simpson's patent is fallacious, at least in a substantial number of cases where grit gets between his Belleville washers, causing them to rotate together. The affidavit showing on this matter is as follows:

*Theoretically*, the two Belleville washers 18 of Simpson should turn relative to each other rather than relative to the link and relative to the bushing 13, and hence *theoretically the washer should not dig into the bottom of the counterbore*. However, in practice, in a substantial number of cases, it has been found by affiant that for some reason such as the lodging of abrasive material between the two Bellevilles, sufficient heat generated by friction between the rotating parts, or for some other reason, the two Bellevilles "freeze" relative to each other and no longer turn. When this happens, *the*

*Belleville washer 18 at the top of Fig. 1 tends to dig into the soft bottom of the counterbore and to score the bottom of the counterbore. When this occurs, the space between the end of the bushing 13 and the bottom of the counterbore effectively increases, thereby reducing the resilient effect of the seal and lessening the seal. Further such scoring of the bottom of the counterbore provides a passage whereby the abrasive material can bypass the seal and get into the bottom of the counterbore, pin 14, and bushing 13, and soon bring about the destruction of the link seal.* [Emphasis added.]

The alleged obviousness here is predicated on the disclosures of the Simpson and Burgman patents and on nothing else. But it seems clear that from reading the Simpson patent it is not even known how the Simpson seal actually operates in practice or what its defects are. Appellant, due to his advantageous position in this art, made his invention in three steps. First, he discovered what the defects of the Simpson seal are; second, he reasoned out what the causes of those defects are; third, he devised a different combination of old elements which would avoid those defects. I am unable to see wherein what he did was obvious in the sense of 35 U.S.C. § 103.

The legal defect of the majority opinion is the same as that of the examiner and the board. All three proceed on the premise that appellant may have his patent *if* he supplies persuasive evidence of the *superiority* of his seal over that of Simpson's. Such proof is demanded, of course, on the premise that appellant's seal is prima facie obvious from the references, which I find not to be the case. The record here shows very clearly that even the defects of Simpson which started appellant's inventive process were anything but obvious. Appellant's invention resides as much in finding the cause of the problem created by those defects as in overcoming it. How, then, can the invention "as a whole" be obvious, as required by section 103?

Since there is no prima facie obviousness, it is beyond legal propriety for the Patent Office to demand evidence of superiority over Simpson. As a practical

matter, it should also be considered what is entailed in supplying such evidence. It can be presumed that Caterpillar tractor tread linkages in such a commercially successful tractor as is produced by Caterpillar do not wear out except after considerable use. It can be further presumed that it would take at least as long to prove superiority of appellant's seal construction as it would to develop, through use, the defects in the Caterpillar Simpson seals. Since only a "substantial number" of Simpson seals—whatever that may mean—develop the defects recited in the affidavit, it would further require that appellant install his seals in a statistically significant number of tractors and somehow manage to get them into parallel service with an equal number of otherwise identical tractors having Simpson seals, running them under a kind of test-track supervision until a "substantial number" of the Simpson seals have been found to break down and then tear down his own seals to find out how much they have worn in comparison. It seems to me that to demand this kind of evidence is to demand the impossible. It might take years, if we assume it is practicable at all, and where, meanwhile, has the Patent Office prosecution gone?

On its face, appellant's proposed solution appears to be a workable one and an advance in the art. He should have his patent with his single claim. Should it turn out that his seal is not in fact superior, after a number of years of trial, only his assignee will be the loser. Certainly the public will not be injured by another patent on a commercially unsuccessful device. On the other hand, if it turns out that appellant's seal is superior in fact to Simpson's in accordance with appellant's educated belief, then his assignee should be protected from imitation without compensation. Such prospective commercial success is a "secondary consideration" indicative of patentability. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The theoretical arguments advanced by the solicitor and accepted by the majority based on Coulomb's second law of friction, like the theories in the Simpson patent, are as much open to question when they come to be tested against the operation of tractor tread link joints in mud, dust, and sand where theories based on laboratory experiments do not seem always to work out in practice. This argument is an afterthought to bolster up a legal argument and entitled to little weight. Even if the theory worked out in practice and the flat washer rotated contrary to appellant's theory, it seems evident that it would not cut the groove in the bottom of the counterbore cut by the edge of a Belleville washer and so would not open up the seal as does the Belleville, beside which grit under the flat washer might cause it to stand still in spite of Coulomb's second law of friction. One theory seems to be as good as another—and as useless—in this area and I think we should be practical and listen to the only expert who has had anything to say of record, the appellant.

For the above reasons I would reverse.